## SOA TINITALI, VALASI A.P. PETELO, and ESENEIASO LIU, for themselves and on behalf of the Soa Family, Plaintiffs

**v.**

## VO'A F. MAISA, SATUI TA'ALA, TALAMESI TA'ALA, and LELEI PETAIA, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 17-92

January 15, 1997

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel:     For Plaintiffs, Gata E. Gurr
             For Defendants, Asaua Fuimaono

Opinion and Order:

This action came regularly for trial on November 18 and December 3, 1996, to determine the ownership of certain land. The parties were present by their counsel. Plaintiffs claimed that the land is the Soa family's communal land. Defendants claimed that the land is Tato Vo'a's individually owned land.

### DISCUSSION

The land at issue, about nine acres and named "Lalovi," is located in the Village of Vaitogi, American Samoa ("the land"). The land is within the principal site of the original village, lying inland of the present principal site of the village near the seashore. The Soa title is a traditional matai or

chief of Vaitogi. The Voʻa title, however, originates from the Village of Olosega in the Manuʻa Islands. The two families are interrelated by marriage and, though now estranged in no small part by this controversy, through social interchange.

Defendants presented evidence that Voʻa family members, under Tato Voʻa's direction, occupied and began to cultivate the land in 1946, when the land was entirely virgin bush. They further offered evidence that Voʻa family members were in uninterrupted possession of the land since 1946, gradually cultivated much of the area and presently maintain the plantations there, buried two family members on the land, and now have several permanent residences there.

Plaintiffs introduced evidence that Soa family members began to cultivate the land many years before 1946, at least from the days when the village proper was in this vicinity, and have continually cultivated and maintained the land since those earlier times. Plaintiffs also put forth evidence that defendants can use the land only under Soa's authority, and that the only Voʻa family member living on the land with Soa's permission is defendant Voʻa F. Maisa's sister, Sui, who renders tautua or traditional service to the Soa titleholder, as the saʻo or senior chief of the Soa family, and is Soa's principal contact with Voʻa family members for participation in Soa faalavelave or family affairs.

Both parties, pursuant to the court's order, surveyed and offered the land for title registration, respectively by plaintiff Valasi A.P. Petelo as Soa communal land and by defendant Voʻa F. Maisa as his individually owned land. The surveyed areas are quite similar but do differ. No one objected to plaintiffs' offer to register. Nine persons, most if not all neighbors, objected to defendants' offer to register. One objector testified, in essence, that he and the other objectors considered the land to be Soʻa communal land.

Defendants contend that the Tato Voʻa-led occupation and cultivation of the land as virgin bush created ownership of the land as the individually owned land of Tato Voʻa and his heirs. Alternatively, they assert that the land has become communal land of the Voʻa family by adverse possession for 30 years.

We are unpersuaded by either of defendants' legal theories. Defendants' use of the land is evident and not disputed by plaintiffs. Plaintiffs' direct use of the land may even have been dormant, at least temporarily, in 1946 and perhaps at other times since. However, we find that the Soa family owned the land as communal land many generations before the Voʻa family came to the land and, essentially used and controlled the land, including the Voʻa family members' presence there, continuously

115

from those early days to the present time. We also find that by reputation in the community the land is recognized as Soa communal land. Hence, we conclude that the land is Soa communal land, not the individually owned land of Tato Vo'a and his heirs.

We further find that the elements of adverse possession are not factually present. While defendants and other Vo'a family members were perhaps in actual, open, and continuous occupancy of the land for the past 30 years, the evidence does not show that their occupancy was exclusive, let alone notorious and hostile. In fact, Sui and her children permanently lived on the land and other Vo'a family members cultivated the land with Soa's permission. We do doubt that family members, whether by blood or marriage, can adversely possess communal land under the active control of the sa'o of their family, and certainly not without clearly signaling their hostility to trigger the required 30-year period. *See Sialega v. Taito*, 3 A.S.R.2d 40, 43 (Land & Titles Div. 1986). Therefore, we conclude that the Vo'a family has not acquired communal ownership to the land by adverse possession, and the Soa family's title remains unaffected by the Vo'a family members' presence on the land.

Two major consequences flow from our conclusion that the Soa family has communal ownership of the land. First, defendants must be evicted from the land and, as trespassers, must, within a reasonable time, remove their residences and any related structures from the land or forfeit their title to these improvements to the Soa family. Only the Soa titleholder, or an authorized family member during any vacancy in the Soa title, can permit defendants and any other Vo'a family members to return to or use the land for any purpose.

Second, the Territorial Registrar's registration of the land as the Soa family's communal land must be set aside. The offer of registration was made by plaintiff Valasi A.P. Petelo, a Soa family member, but not the sa'o. An offer of registration of communal land must be accompanied by a survey requested by the sa'o, a mandatory requirement. A.S.C.A. § 37.0102(d); *Galea'i v. Ma'ae*, 2 A.S.R.2d 4 (App. Div. 1984). Plaintiff Valasi A.P. Petelo made the offer on plaintiff Soa Tinitali's behalf with permission, but § 37.0102(d) does not permit this or any other exception. *Id.*; *Faleafine v. Suapilimai*, 7 A.S.R.2d 108, 113 (Land & Titles Div. 1988).

ORDER

1. Title to the land is quieted as the Soa family's communal land.

2. Defendants are evicted from the land.

116

3. Defendants shall remove their residences and related structures from the land within 120 days after the date this order is entered. The Soa family shall own these residences and related structures if defendants fail to timely remove these improvements from the land.

4. Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are permanently enjoined from entering onto the land, building any structures or other improvements on the land, or using the land for any other purpose, without prior permission by the Soa titleholder, or by an authorized family member during any vacancy in the Soa title.

5. The Territorial Registrar shall set aside the registration of the land as the Soa family's communal land. The Territorial Registrar shall not register or accept an offer of registration of the land as the Soa family's communal land, unless the offer is accompanied by a survey requested by the sa'o of the Soa family and meeting all other requirements of A.S.C.A. § 37.0102. Since the Soa title is presently vacant, registration of the land as the Soa family's communal land cannot occur until a successor Soa holds the office.

6. The Clerk of Courts shall deliver a certified copy of this opinion and order to the Territorial Registrar.

It is so ordered.